## AUDITOR GENERAL v. WELLMAN.

1. TAXATION — SPECIAL ASSESSMENTS — REGULARITY OF PAVING TAX—MUNICIPAL CORPORATIONS.

Where records of a municipal corporation failed to show by direct proof that plans and specifications for paving were filed with the clerk, but the records and resolutions of the common council referred to them and recited that they were reported to the council and made a part of the contract, it will be presumed that they were duly filed and furnished to the council.

2. SAME — MUNICIPAL CORPORATIONS — ASSESSMENTS — BENEFITS— PORT HURON CITY CHARTER.

An assessment for paving in proportion to frontage, as required by the charter of the city of Port Huron, is valid; an assessment in accordance with benefits being unwarranted by its provisions.

3. SAME—RESOLUTIONS OF COMMON COUNCIL—VALIDITY—PAVING TAX.

The adoption of a resolution by a municipal council authorizing the construction of pavement in accordance with plans and specifications of the city engineer, and providing for bids on several kinds of pavement, followed by the adoption of a second resolution determining the necessity of paving and the kind of pavement, which was one of the kinds bid upon, constitutes a compliance with the charter requirements.

4. SAME—EXCESSIVE AMOUNT.
   The excessive nature of the assessment is not open to review, if at all, on a record which contains no evidence of values.

5. SAME—EVIDENCE—VALUES.
   The assessment rolls are not competent evidence of values.

6. SAME—NOTICE—PUBLICATION.
   Publication of a notice of the proposed improvement and an opportunity for review of the assessment afford sufficient provision for objections without personal notice.

Appeal from St. Clair; Law, J. Submitted February 25, 1910. ( Docket No. 113.) Decided March 19, 1910.

Petition by James B. Bradley, auditor general, for the sale of land delinquent for taxes: On objections of Charles Wellman and others. From a decree for petitioner, contestants appeal. Affirmed.

*John E. Bird*, Attorney General, and *Joseph Walsh*, City Attorney, for petitioner.

*William T. Mitchell* (*Stevens, Graham & Stevens*, of counsel), for contestants.

HOOKER, J. The defendants in this case, five in number, owners in severalty of six lots in the city of Port Huron, are appellants. The lots were assessed in 1905 for a paving tax. These assessments were not paid, and this proceeding is the auditor general's petition for foreclosure of the State lien for taxes, with the objections of the defendants, which objections were overruled in the circuit court.

The questions discussed by defendants' counsel, as shown by the brief, are:

(1) That the paving proceedings are invalid, for the reason that the council did not have any plans and specifications before it when it adopted the resolution that the work "was a necessary public improvement."

(2) That the law under which the council acted con-

tained no requirement or authorization of a finding of benefits by the council.

(3) The resolution was insufficient for the reason that it omitted to state the kind of material for the pavement and curbing.

(4) The second resolution, declaring a necessity for a macadam street, superseded an earlier resolution for a pavement of brick, and therefore the adoption of and the assessment for a brick pavement were void.

(5) The law provides no notice to taxpayers, so that they may object to the proposed pavement before it is ordered.

The provisions of the charter (Act No. 542, Local Acts 1903, chap. 17, §§ 2-4) require:

(1) A petition filed with the council.

(2) Reference to the superintendent of public works.

(3) Report with estimates of cost and plans and specifications when needed (with recommendations). See Act No. 390, Local Acts 1885, chap. 13, § 4.

(4) Resolution of council of public necessity and fixing assessment district.

(5) Adoption and approval of plans and specifications with or without changes or amendment.

(6) Direction to superintendent of public works to advertise for proposals according to plans and specifications.

(7) Opening of bids and reports to council.

(8) Submission of question of raising amount required to board of estimates.

(9) Award of contract and order directing engineer to make roll.

The proceedings actually taken were as follows:

(1) A petition was filed; also a remonstrance.

(2) These were referred to the superintendent of public works.

(3) The superintendent made his report, accompanied by estimates for six kinds of pavement.

(4) A resolution was passed declaring the construction of a pavement a public necessity, ordering its construction 24 feet wide, with stone or cement curbing (width and thickness not specified in resolution) " in accordance with plans and specifications prepared by the superintendent of public works and submitted to this council which are hereby adopted." It also fixed the boundaries of the assess-

ment district, and directed that the superintendent advertise for proposals in accordance with the plans and specifications in his office.

(5) A similar resolution for the construction of a macadam pavement was adopted. All of the foregoing occurred at one and the same meeting of the common council held on May 15, 1905.

(6) At a meeting held June 8th the superintendent submitted a lengthy report, showing in detail the various bids of contractors on the different kinds of pavement; *i. e.*, brick and macadam, etc.

(7) A resolution was passed that it was necessary to pave said street with Metropolitan brick, Berea (stone) curbing, and Medina (stone) radius, etc., and to raise $8,750 for the purpose, and that a meeting of the board of estimates be called and they requested to give their consent to raising said sum. At an adjourned meeting, another similar resolution, different only as to the method of assessment, was passed.

(8) At a meeting of said board on June 23, 1905, its assent was given as requested.

(9) This was reported to the council at a meeting held July 5th.

(10) Contract was awarded, and mayor and clerk directed to execute same. This was at a special meeting, and similar action was repeated at a regular meeting held July 17th.

(11) Plans and specifications were made part of contract, which was duly executed, and the pavement has been constructed.

1. Plans and Specifications. Counsel claim that plans and specifications were not before the board. This claim is based on the absence of a report showing that they were filed, and the testimony of Mr. Mitchell (admitted to be true) that a recent examination of the clerk's office by him failed to find them. Reference is made to the plans and specifications in several resolutions; one of them reciting that they were reported to the council. Furthermore, they are made a part of and copies attached to or recited in the contract. We are of the opinion that this is sufficient to warrant the conclusion that they were duly furnished. The absence of the same from the clerk's office is

not accounted for. This absence does not prove that they were not filed there. We will presume that they were from the facts shown. We see no obstacle nor objection to a reference to and report by the superintendent on one and the same evening with plans and specifications, which might have been prepared in advance, if necessary.

2. Assessment of Benefits. We are of the opinion that the law does authorize an assessment for benefits. Section 5, chap. 17, of the charter, explicitly requires an assessment roll to be made in the proportion of the tax that the lot frontage bears to the amounts to be raised, to be estimated by the engineer. Section 7 requires its confirmation by the council after review and correction. We have held that an assessment based on frontage is valid in paving cases. *City of Kalamazoo* v. *Francoise*, 115 Mich. 554 (73 N. W. 801); *Cass Farm Co.* v. *City of Detroit*, 124 Mich. 436 (83 N. W. 108); *Palmer* v. *City of Port Huron*, 139 Mich. 471 (102 N. W. 996).

3. Effect of Second Resolution. Counsel asks that we apply to the two resolutions the rules that a statute last passed stands in exclusion of an earlier one. We think this should not be done. These were in no sense laws, but resolutions subject to change. It is obvious that the council passed these resolutions for a legitimate purpose, viz., of laying a foundation for eitheir kind of pavement, in order that it might secure competitive bidding between builders of different kinds of pavement. We can see no objection to this. The proper steps having been taken for either kind, one was selected, while the other was abandoned. Counsel for defendant recognizes the fact that this was the design of the council, and characterizes it as "an attempt to ride two horses without a bridle, which has resulted in an outrageous and confiscating assessment." We do not see that the alleged outrageous assessment is the result of this method, unless it is to be said because of the adoption of brick instead of macadam, which the council had power to do without any consideration of macadam, had it chosen to do so.

**4. Excessive Assessment.** Counsel argue that the assessment on some of these lots nearly or quite equals their value. We cannot review the fairness of the assessment on this record; there being no testimony as to value except assessment rolls, which are not competent evidence to establish value. We do not mean to imply that it is an open question.

**5. Notice to Abutting Owners.** We have seen that the charter requires publication and opportunity for review. Charter, chap. 17, § 7; *Auditor General* v. *Hoffman*, 132 Mich. 198, 202 (93 N. W. 259). Counsel contend that this is insufficient, and claim that abutting owners have a right to notice, so that they may have an opportunity to object to the proposed improvement, and that no provision is made for such. This was unnecessary, as we held in the case of *Parsons* v. *City of Grand Rapids*, 141 Mich. 467 (104 N. W. 730), and *Thayer Lumber Co.* v. *City of Muskegon*, 152 Mich. 66 (115 N. W. 957). See, also, *Auditor General* v. *Hoffman*, *supra*.

The decree is affirmed, with costs.

MONTGOMERY, C. J., and OSTRANDER, BLAIR, and STONE, JJ., concurred.